IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| BARRY THOMAS NANCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-01050-JDB-tmp |
| | ) | |
| LESLIE NANCE, *et al.;* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER DENYING MOTION TO AMEND,
DISMISSING CONSOLIDATED COMPLAINT,
AND
GRANTING LEAVE TO AMEND CLAIMS DISMISSED WITHOUT PREJUDICE

On March 6, 2024, a pro se civil complaint was filed pursuant to 42 U.S.C. § 1983 by Barry Thomas Nance, then incarcerated at the Crockett County, Tennessee, jail, and his daughter, O'leisha Nance. (Docket Entry ("D.E.") 1.) Mr. Nance filed a motion for leave to proceed in forma pauperis ("IFP"). (D.E. 2.) On November 1, 2024, the Court granted the motion and directed Ms. Nance to pay the filing fee or file her own motion to proceed IFP. (D.E. 5.) On December 6, 2024, Mr. Nance amended the complaint.[1] (D.E. 6.) On December 16, 2024, the Court dismissed Ms. Nance from the case for failure to prosecute.[2] (D.E. 7.) On January 2, 2025, Mr. Nance moved for reconsideration, asking that Ms. Nance be afforded an opportunity to file an

---

[1] Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within twenty-one days of serving it, or within twenty-one days of service of a responsive pleading.

[2] As a result of this dismissal, "Plaintiff" and "Nance" will hereinafter refer only to Barry Nance.

affidavit of indigency. (D.E. 8.) The motion was denied. (D.E. 10.) On May 5, 2025, Mr. Nance filed a document entitled "Motion Asking to Amend Complaint of Punitive Damage." (D.E. 12.)

I. PLAINTIFF'S ALLEGATIONS.

Nance's allegations are as follows. The Court notes at the outset that it is difficult to discern from Plaintiff's filings when many of the events alleged actually occurred.

A couple of years prior to the filing of the complaint, someone shot into Plaintiff's home in Alamo, Tennessee. His ex-wife, Leslie Nance, and other family members were inside, but no one was injured. Plaintiff chased the shooters through an area behind the house. His nephew, Keeon Nance, was the "only person [who] knew of that path in the yard." (D.E. 6 at PageID 43.) According to Plaintiff, Keeon Nance and a friend were also responsible for "shooting up" another house in Alamo. (*Id.*) The shooters jumped into a parked car and fled. Police officials, including Eric Smith[3] and Brad York, arrived on the scene. York knew who the shooters were. No investigation took place, there were no arrests, and the case was closed, despite Nance's multiple inquiries.

Plaintiff moved his family to another house in Alamo.[4] Around that time, he started seeing items related to Keeon Nance in Leslie's vehicle. Six months later, she moved into an apartment in Bells, Tennessee. She did not reside at the apartment but instead went there to retrieve clothing for the children. She also began filing orders of protection against Plaintiff, only to later drop them. Keeon Nance started coming around Plaintiff's house when he was away. In January 2024,

---

[3]Plaintiff names a Sergeant Eric Jones as a defendant, but he also references Sergeant Eric Smith in the complaint. (*See* D.E. 1 at PageID 1-2, 4-5, 7.) It is unclear whether they are the same person.

[4]This appears to be Plaintiff's mother's, and Keeon's grandmother's, residence.

2

Plaintiff asked Leslie if Keeon and another individual were responsible for the shooting "because the streets are talking and saying that you are having an affair with my nephew." (D.E. 1 at PageID 3.) She initially denied the accusation concerning the affair but later admitted to it.

The following day, she told Plaintiff that she would stop by after school with the children and he responded that he had something to do and would call her when he was finished. When he attempted to return her call, there was no answer. Because Plaintiff had previous issues with Leslie leaving the children home alone, he reached out to the Bells Police Department ("BPD") to request a welfare check. Plaintiff and O'leisha went to Leslie's residence (apparently the apartment in Bells) and found their sons JaThomas and Julius alone. He asked the boys why they did not answer the phone, to which they replied that Leslie told them not to answer calls when she was at Keeon's residence. In Leslie's bedroom, Plaintiff discovered a dresser drawer with a loaded gun on the floor. He called to O'leisha, and the gun was removed for the children's safety. Plaintiff also phoned BPD Police Chief Kevin Leggions to report what they had found. Leggions responded that he was just then arriving at the apartment, as was Leslie, a circumstance that Plaintiff noted had occurred before. Leslie spoke to Leggions and coerced the children to tell him that Plaintiff and O'leisha had broken in and stolen the gun and other items. Plaintiff was arrested and charged.

Nance filed a claim with Child Services, and was assured that no one would retaliate against him. However, when Child Services contacted Leslie, she took out an order of protection against him. The order of protection included the children because Leslie alleged that they were afraid of Plaintiff and that he had threatened their lives. They went before the chancery judge on February 7, 2024, and the case was set for March. On February 14, 2024, Leslie let the children "out on [Plaintiff]" at a store. (*Id.* at PageID 5.) The next day, he was arrested in front of his residence by Sergeant Eric Jones for violating the order of protection and for aggravated domestic assault. He

3

was not read his *Miranda*[5] rights. In the course of the arrest, drugs were found in his pocket. It is Nance's belief that Child Services was conspiring with his ex-wife to retaliate against him and take his children away. Plaintiff was in his backyard cleaning his children's swimming pool. His friend Ricky Johnson was also there smoking marijuana. After Johnson left, Plaintiff noticed a sock containing cocaine on his deck. He phoned Johnson to tell him he had left the drug behind and Johnson replied that he was returning to get it. Before Johnson arrived, however, Jones appeared, conducted the arrest of Plaintiff, and found drugs and firearm magazines "that [his] family had while they stayed at the residence." (D.E. 6 at PageID 37.) During their time on the property, officers destroyed cameras Nance had been using for the safety and security of his children in light of the previous shooting incident. Nance alleges that individuals, including his ex-wife, attempted to make it appear that he had a gun, even though no gun was found on him or in his possession.

At a hearing on March 6, 2024, a Crockett County Chancery Court judge found that Plaintiff had not violated the order of protection. Leslie asked if Plaintiff could "parent the kids like he was doing because he's a good 'father.'" (*Id.* at PageID 37-38.) The judge rejected the request because Leslie had included them on the order of protection. Neither Jones nor the prosecutor appeared in court, leading Plaintiff to believe Jones was somehow involved.

Other events also occurred on dates unknown to the Court. York, who worked with the drug task force, took Plaintiff's phone from his home when he was not there and obtained the phone's security code from Leslie. Crockett County General Sessions Judge Paul B. Conley threw out a protection order, but Leslie's family got a Gibson County, Tennessee, judge to reinstate the

---

[5]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

4

order. That judge bound the matter over to a grand jury and Circuit Court Judge Clayburn Peeples dismissed the case. Leslie's uncle, Eric Uselton, a chief deputy at the Crockett County jail, was involved. On one occasion, Plaintiff was arrested at his residence on an order of protection and an old warrant from Waverly, Tennessee. While he was calling his mother from the jail, he "heard someone say hit him," after which he was tased to the floor. (*Id.* at PageID 40.) Plaintiff developed a staph infection after a work injury. A nurse in Waverly who treated him told him that Crockett County police said he "was dangerous and that [he] was going to kill one of them." (*Id.*) Uselton and another officer appeared at his worker's compensation hearing and testified that he had fought them, which resulted in a denial of worker's compensation benefits.

These and other incidents, including consolidation of cases against Plaintiff without his consent and false statements made by Leslie in court and to law enforcement, led him to believe that prosecutors, judges, police, and political officials were working in concert with her and Uselton to harm him. He further claims that his ex-wife stole money from his bank account subsequent to their divorce.

Plaintiff brings this action against Leslie and Keeon Nance, Leggions,[6] Jones, York, and Child Services. He seeks: (1) charges against both Nances and all officers for conspiracy; (2) payment of "all that has been took from [him] by them and [his] last bank account [he] ever had"; (3) charges of conspiracy against "Sgt. Eric Smith"[7] and the Alamo Police Department and a trial; (4) charges and fines against Leggions and BPD for believing hearsay evidence of children and

---

[6]The Clerk is DIRECTED to modify the docket to change Kevin "Leggets" to Kevin "Leggions."

[7]*See supra* n.3.

5

because Leggions has "two Domestic Assaults on his own wife"; (5) payment for pain and suffering; and (6) unspecified relief from "Children Services." (D.E. 1 at PageID 7.)

II.     MOTION TO AMEND.

In his motion to amend, Plaintiff avers that, on January 2, 2025, he made bond in his criminal case after being in jail for one year and that, on April 3, 2025, the state revoked his bond for a seven-and-a-half-year-old case that should have been dismissed or thrown out. He "feels like the State's Attorneys are trying to harass and intim[id]ate [him] to pleading to charges." (D.E. 12 at PageID 58.)

The motion seeks to amend the complaint for a second time. While a plaintiff may "amend [his] pleading once as a matter of course,"[8] he may amend it thereafter only with leave of the court, which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). A motion to amend should be "denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). "A motion to amend is futile 'where a proposed amendment would not survive a motion to dismiss.'" *Banerjee v. Univ. of Tennessee*, 820 F. App'x 322, 329 (6th Cir. 2020) (quoting *Thiokol Corp. v. Dep't of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993)). In the end, the district court has discretion to grant or deny a motion to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court construes the request for punitive damages against the state attorneys for intimidation and harassment as a claim against state prosecutors. To the extent Plaintiff seeks to allege a claim against them, the prosecutors are absolutely immune from suit. *See Imbler v.*

---

[8] *See supra* n.1.

6

*Pachtman*, 424 U.S. 409, 428 (1976) (holding that prosecutors are entitled to absolute immunity from suit under § 1983); *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) ("[A] prosecutor who undertakes acts in the preparation or initiation of judicial proceedings is entitled to absolute immunity"). "A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." *Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012). A prosecutor's decision to bring or not bring charges against a particular person is protected by prosecutorial immunity. *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010). The decision to file a motion to revoke bond is also protected by prosecutorial immunity, because it concerns a typical prosecutorial function. *See Sanders v. Carro*, Case No. 5:23 CV 01922, 2024 WL 382454, at *4 (N.D. Ohio Feb. 1, 2024) (citing *Carey v. Okubo*, 158 F. App'x, 962, 967-68 (10th Cir. 2005)).

To the extent Nance alleges that state prosecutors have attempted to intimidate or harass him into pleading guilty, these allegations are conclusory and would not survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (conclusions in a complaint "must be supported by factual allegations" and are not presumed to be true). Plaintiff has not alleged any facts to show that the state prosecutors would not be immune under these circumstances.

As amendment to add these claims would be futile, the motion to amend is DENIED.

III. <u>LEGAL STANDARD.</u>

The Plaintiff is no longer incarcerated. Because he is proceeding IFP, his case is subject to screening pursuant to 28 U.S.C. § 1915(e)(2). The statute provides that federal courts "shall dismiss [a] case . . . if the court determines that" the complaint (1) "is frivolous or malicious," (2) "fails to state a claim on which relief may be granted," or (3) "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In assessing whether the

7

complaint states a claim on which relief may be granted, the district court is to apply the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Iqbal*, 556 U.S. at 677-79 and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Applying these standards, the district court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*). The court is not to assume that conclusory allegations are true; while "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

Fed. R. Civ. P. 8 provides guidance on this issue. It requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It also mandates that factual allegations make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3. Though the statement need not contain detailed factual allegations, it must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

Courts screening cases accord more deference to pro se complaints than to those drafted by lawyers. *Lucas v. Chalk*, 785 F. App'x 288, 290-91 (6th Cir. 2019); *see also Williams*, 631 F.3d at 383 ("Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed."). Pro se litigants are not, however, exempt from the requirements of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *see also Brown v. Matauszak*, 415 F. App'x 608, 612-13 (6th Cir. 2011) (affirming dismissal of pro se complaint for failure to comply with "unique

8

pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'").

IV. ANALYSIS.

The allegations in the complaint and amended complaint are combined for purposes of screening under § 1915(e)(2) as the "Consolidated Complaint." Plaintiff alleges that his civil rights; his First, Fourth, and Fourteenth Amendment constitutional rights; and his human rights have been violated. To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970).

A. Private Actors.

Plaintiff has named Leslie and Keeon Nance as defendants. The Sixth Circuit recognizes that private actors may be subject to § 1983 claims if their conduct qualifies them to be considered state actors and if the actions are fairly attributable to the state. *Nugent v. Spectrum Juv. Just. Servs.*, 72 F.4th 135, 139-40 (6th Cir. 2023), *reh'g en banc denied*, 2023 WL 5498752 (6th Cir. Aug. 1, 2023). A private actor may be considered a person acting under color of state law (a state actor) if "(1) the deprivation complained of was 'caused by the exercise of some right or privilege created by the [s]tate' and (2) the offending party 'acted together with or has obtained significant aid from state officials, or because his [or her] conduct is otherwise chargeable to the [s]tate.'" *Tahfs v. Proctor*, 316 F.3d 584, 590-91 (6th Cir. 2003) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). There are three tests for determining whether private action is fairly attributable to the state: (1) the nexus test, (2) the public function test, and (3) the state compulsion test. *Id*. at 591.

9

The first test requires that a sufficiently close relationship exist between the state and the private actor (through regulation or by contract) so that private action may be attributable to the state. *Id*. The second requires that the private actor "exercise powers which are traditionally exclusively reserved to the state." *Id*. (citing *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995)). To determine whether the public function test is satisfied, "the court conducts a historical analysis to determine whether the party has engaged in an action traditionally reserved to the state, and the plaintiff bears the burden of making that showing." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). A plaintiff can meet this burden by "advancing historical and factual allegations in his complaint giving rise to a reasonable inference that the function is traditionally exclusively in the province of the [s]tate." *Nugent*, 72 F.4th at 140 (cleaned up). The state compulsion test requires proof that the state significantly encouraged or coerced the private actor, either overtly or covertly, to take a particular action so that the choice is actually that of the state. *Tahfs*, 316 F.3d at 591.

Plaintiff has not alleged that Keeon Nance has a sufficiently close relationship to the state, that he performs a public function, or that the state has encouraged or coerced him such that his actions would be attributable to the state. Because Keeon Nance is not a state actor, Plaintiff's § 1983 claims against him fail to state a claim to relief. Plaintiff's § 1983 claims against Keeon Nance are therefore DISMISSED WITHOUT PREJUDICE.

Plaintiff asserts that Leslie Nance has made false statements to law enforcement and the courts, that Uselton's influence as the chief deputy at the Crocket County jail has caused violation of his constitutional rights, and that Uselton's testimony at Plaintiff's worker's compensation hearing caused him to lose his benefits. Notably, Plaintiff has not named Uselton as a defendant. "[F]urnishing information to law enforcement officers, without more, does not constitute joint

10

action under color of state law" such that Leslie Nance could be considered a state actor. *See Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1157 (10th Cir. 2016). Joint action arises "only when an officer's decision to initiate an arrest or a prosecution was not independent of a private party's influence." *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1235 (10th Cir. 2020). Plaintiff has presented conclusory allegations and has not averred facts that Uselton and Leslie Nance acted together or that she obtained significant aid from Uselton or other state officials such that her conduct is otherwise chargeable to the state. Plaintiff has not alleged that Leslie Nance has a sufficiently close relationship to the state, that she performs a public function, or that the state has encouraged or coerced her actions such that they would be attributable to the state. As Plaintiff has failed to allege facts establishing that Leslie Nance is a state actor, his § 1983 claims against her are DISMISSED WITHOUT PREJUDICE.

  B. <u>Municipal Liability and Police Departments.</u>

Plaintiff has named the BPD and the Alamo City Police Department ("ACPD") as defendants. It is well-established in the Sixth Circuit that a police department is not a proper defendant in a § 1983 action. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("the Police Department is not an entity which may be sued"). "[S]ince *Matthews*, federal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit." *Mathes v. Metro Gov't of Nashville & Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010). The BPD and ACPD are not entities that are capable of being sued. *See Jones v. Pigeon Forge, Tennessee Police Dep't*, No. 24-5485, 2024 WL 5697437, at *1 (6th Cir. Nov. 19, 2024) (Pigeon Forge Police Department was not an entity capable of being sued, citing *Matthews*). To that extent the claims against the

11

BPD and ACPD are DISMISSED WITH PREJUDICE for failure to state a claim to relief under § 1915(e)(2)(B)(ii).

Even if the Consolidated Complaint were construed as suing the cities of Bells and Alamo, Tennessee, a city may be held liable *only* if a plaintiff's injuries were sustained pursuant to an unconstitutional custom or policy of the city. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 137-38 (1988) (Brennan, J., concurring) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)).

Nance does not allege that he has been deprived of a right because of a policy or custom of either city. He instead seeks relief based on his allegations about the police departments' involvement in his arrests and the enforcement of protection orders. Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168-69 (1993), a complaint must be sufficient to put the municipality on notice of a plaintiff's theory of liability, *see, e.g.*, *Thacker v. Goins*, No. 2:17-CV-32-HSM-MCLC, 2018 WL 6036537, at *4 (E.D. Tenn. Nov. 16, 2018).

The Consolidated Complaint does not identify any such policy or custom. To the extent Plaintiff's claims can be construed as claims against the cities of Bells and Alamo, Tennessee, the

12

claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief under § 1915(e)(2)(B)(ii).

    C. Leggions, Jones, and York.

With regard to Leggions, Jones, and York (the "Remaining Defendants"), Plaintiff does not specify whether he is suing them in their official or individual capacities. Although it is preferable that a plaintiff state explicitly whether a defendant is sued in his "individual capacity," the failure to do so is not fatal if the "course of proceedings" indicates that the defendant received sufficient notice that the intent was to hold him personally liable. *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc). The Sixth Circuit has applied the "course of proceedings" test to determine whether § 1983 defendants have received notice of a plaintiff's intent to hold a defendant personally liable. *Id.* at 773; *see Rashada v. Flegel*, No. 23-1674, 2024 WL 1367436, at *3 (6th Cir. Apr. 1, 2024); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (noting that the "course of proceedings" in unspecified capacity cases "typically will indicate the nature of the liability sought to be imposed"). The test considers the nature of the plaintiff's claims, requests for compensatory or punitive damages, the nature of any defenses raised in response to the complaint, and whether subsequent filings put the defendant on notice of the capacity in which he is sued. *Moore*, 272 F.3d at 772 n.1.

Based on the course of proceedings to date, Plaintiff's claims against the Remaining Defendants are official capacity claims. The official capacity claims in the Consolidated Complaint are treated as claims against the Remaining Defendants' employers—Bells and Alamo, Tennessee. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews*, 35 F.3d at 1049). As stated *supra*, Plaintiff has not alleged a municipal policy or custom to state a claim for municipal liability against Bells or Alamo, Tennessee. Nance's claims against

13

the Remaining Defendants in their official capacities are therefore DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief under § 1915(e)(2)(B)(ii).

D. Criminal Charges and Fines.

This Court does not have jurisdiction to order that a criminal complaint be filed. *See Lillacalenia v. City of Louisville*, Civil Action No. 3:24-cv-121-RGJ, 2024 WL 1942134, at *4 (W.D. Ky. May 2, 2024) (dismissing request for criminal charges for failure to state a claim). "It is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 234-35 (D.C. Cir. 1965) (per curiam). Only prosecutors have the authority to initiate criminal charges. *See United States v. Nixon*, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"); *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) ("A private citizen has no authority to initiate a federal criminal prosecution; that power is vested exclusively in the executive branch."); *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986) ("Authority to initiate a criminal complaint rests exclusively with state and federal prosecutors; whether to bring such a complaint is generally within the discretion of the prosecutor.") The Court cannot grant relief in the form of prosecuting Defendants on criminal charges. Plaintiff's requests for criminal charges and fines are DENIED.

V. CONCLUSION.

For the reasons explained above:

A. The claims against Leslie Nance and Keeon Nance are DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

B. The claims against the BPD and ACPD are DISMISSED WITH PREJUDICE for failure to state a claim to relief.

      C.      The claims against the cities of Bells and Alamo, Tennessee, and the Remaining Defendants in their official capacities are DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

      D.      The requests for criminal charges and fines against the Defendants are DENIED.

      E.      The Consolidated Complaint is DISMISSED in its entirety.

      F.      The claims enumerated in Paragraphs (A) and (C) above are collectively referred to as the "Claims Dismissed Without Prejudice." Leave to amend the Claims Dismissed Without Prejudice is GRANTED. Amended claims must be filed within twenty-one days after the date of this order. An amended pleading must comply with the Federal Rules of Civil Procedure, including but not limited to Rule 8's requirement of a short and plain statement of Plaintiff's claims. An amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleadings. Plaintiff must sign the amended complaint, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each Defendant sued on that count. If Plaintiff fails to comply with Rule 8 and the Court's instructions for pleading amended claims, the Court will dismiss improperly pleaded amended claims with prejudice. If Plaintiff fails to file an amended complaint within the time specified, the Court will dismiss the case with prejudice and enter judgment.

      IT IS SO ORDERED this 27th day of October 2025.

                                                s/ J. DANIEL BREEN
                                                UNITED STATES DISTRICT JUDGE